IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MELISSA ANNE WONG, § | |
| § | |
| V.                             § | A-11-CV-978-AWA |
| § | |
| CAROLYN W. COLVIN,[1]         § | |
| ACTING COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Melissa Anne Wong's Complaint seeking reversal of the final decision of the Social Security Administration (Dkt. No. 1); Plaintiff's Brief in Opposition to the Commissioner's Answer (Dkt. No. 14); Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 18); and Plaintiff's Reply Brief (Dkt. No. 19). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

### I. GENERAL BACKGROUND

Plaintiff Melissa Anne Wong ("Wong") filed her application for disability insurance benefits on April 14, 2008, and supplemental security income payments on April 23, 2008, alleging disability beginning April 27, 2004, due to injuries to her neck, hand, back, and hip. Tr. at 109–13. Wong's claims were denied initially on July 24, 2008, and upon reconsideration on February 26, 2009. Tr. at 57–61, 62–67. After Wong filed a written request for a hearing, a hearing was held before an Administrative Law Judge ("ALJ") on July 13, 2010. Tr. at 32. On August 13, 2010, the ALJ issued her decision finding that Wong was not disabled under the Social Security Act. Tr. at 20–27. After the Appeals Council declined to review her case on September 16, 2011, the ALJ's decision became

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security following the expiration of Michael J. Astrue's six-year term as Commissioner.

the final administrative decision of the Commissioner for purposes of the Court's review pursuant to 42 U.S.C. § 405(g). Wong filed the instant lawsuit on November 15, 2011, pursuant to 42 U.S.C. 405(g), requesting that the Court reverse or remand the ALJ's decision denying her benefits.

## II.  STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment;"

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520. A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance-in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In other words, the Court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After considering all of the evidence before her, the ALJ determined that Wong had severe impairments of (1) disc protrusions at C4-5, C5-6, and C6-7 with right radicular syndrome and (2) morbid obesity under 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c). Tr. at 22. However, the ALJ found that Wong's impairments neither individually nor in combination met or medically equaled any of the listed impairments under the regulations. Tr. at 23. The ALJ concluded that Wong had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that Wong could only occasionally climb, balance, stoop, kneel, crouch, crawl and could not climb ropes or ladders, reach at or above shoulder levels for prolonged periods, be in a fixed head position or required to engage in continuous or repetitive motion at end range of motion, or be subjected to concentrated exposure to extreme heat or humidity. Tr. at 23–26. Based upon this RFC, the ALJ found that Wong could perform her past relevant work as a customer service representative, receptionist, and shipping or order clerk. Tr. at 26–27. Consequently, the ALJ concluded that Wong was not under a disability as defined by the Social Security Act and denied Wong's applications for disability insurance benefits and supplemental security income.

### VI. ANALYSIS

Wong alleges that the ALJ's finding that Wong could perform her past relevant work should be reversed and remanded because the ALJ's decision is not supported by substantial evidence. Specifically, Wong argues that the ALJ (1) failed to follow the treating physician rule and (2) did not properly evaluate Wong's credibility. Dkt. No. 14 at 11–20. It is unclear from Wong's brief whether she is seeking review of the ALJ's denial of both her applications for disability insurance

4

benefits or supplemental security income.  Thus, the Court will consider her contentions in relation to both of her claims.

**A.      The Treating Physician Rule**

Wong contends that the ALJ improperly discounted the medical opinions of Dr. John Dingilian, Wong's treating physician, and Dr. Gil Tepper, an orthopedic surgeon, by mischaracterizing their opinions as being based upon Wong's subjective complaints rather than medical evidence.  In addition, Wong asserts that the opinions on which the ALJ did rely were not supported by substantial evidence to override the opinions of Dr. Dingilian.  Wong further argues that even if the opinions of Dr. Dingilian were not entitled to controlling weight, the ALJ did not have good cause to entirely reject Dr. Dingilian's opinion.

Generally, the Fifth Circuit has established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  However, "[e]ven though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status." *Id.*; *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (internal quotations omitted).  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Newton*, 209 F.3d at 455.  Opinions of the claimant's treating physician are not conclusive.  *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999).

As an initial matter, the Court notes that neither the Commissioner nor Wong assert that Dr. Tepper was Wong's treating physician.  Dkt. Nos. 14, 15.  Consequently, the ALJ was not bound by the opinions of Dr. Tepper, who was a consultant examiner.  Contrary to Wong's assertion that Dr.

5

Tepper's opinions should have been accorded significant weight, "Social Security Ruling 96–6p and 20 C.F.R. §§ 404.1527 and 416.927 merely require that the ALJ and Appeals Council reflect that consideration was given to any medical consultant's opinion." *Gomez v. Barnhart*, No. SA-03-CA-1285-XR, 2004 WL 2512801 at *2 (W.D. Tex. Nov. 5, 2004); *see also Price v. Astrue*, No. 3-09-CV-1275-BD, 2011 WL 888260 at *5 (N.D. Tex. Mar. 11, 2011). Here, the ALJ's decision clearly reflects that she gave consideration to Dr. Tepper's opinions. In her decision, the ALJ discussed Dr. Tepper's findings from 2008 as well as the lumbar impairment questionnaire submitted by Dr. Tepper in April, 2009. Tr. at 20–27. Thus, the ALJ satisfied her obligation of considering the opinions of a medical consultant under the Social Security regulations and could weigh Dr. Tepper's opinions with regard to Wong's claims for disability insurance benefits and supplemental security income benefits accordingly. As such, the remaining issue is whether the ALJ properly discounted the opinions of Dr. Dingilian, Wong's treating physician.

### 1. Wong's Claim for Disability Insurance Benefits

After careful consideration, the Court finds that there is substantial evidence to support the ALJ's decision that Wong is not entitled to disability insurance benefits under Title II of the Social Security Act. From the record and the Parties' briefs, it is undisputed that Wong had acquired sufficient quarters of coverage to remain insured under the Social Security Act and regulations only through June 30, 2006. Tr. at 20; Dkt. No. 14 at 1. Thus, Wong must demonstrate that she was disabled as of that date in order to be eligible for disability insurance benefits. *See, e.g.*, *Jones v. Astrue*, 691 F.3d 730, 732 (5th Cir. 2012); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

Wong alleges that the ALJ failed to accord proper weight to the opinions of her treating physician, Dr. Dingilian. However, Dr. Dingilian did not begin to treat Wong as a patient until July

25, 2006, which was after the expiration of Wong's eligibility for disability insurance benefits. Tr. at 462. Dr. Dingilian's opinions were provided outside the time frame in which Wong had to establish she was disabled. Thus, the ALJ did not improperly discount the views of Dr. Dingilian with regard to Wong's claim for disability insurance benefits. In fact, in scrutinizing the record, even Dr. Dingilian opined that Wong was not disabled as of June 30, 2006. For example, in his letter dated September 17, 2008, Dr. Dingilian specifically notes that Wong's back problems resulted from a motor vehicle accident in *August of 2006*. Tr. at 416. Additionally, Dr. Dingilian submitted a Multiple Impairment Questionnaire on October 28, 2008, in which he stated that the earliest date that Wong's symptoms and limitations described in the questionnaire applied was *September 1, 2006*. Tr. at 475. Although Dr. Dingilian found that Wong had limitations with regard to the weights she could lift and carry, he found that Wong had no limitations in grasping objects, using her fingers and hands, and using her arms for reaching. Tr. at 469–76. Perhaps most importantly, Dr. Dingilian completed a second Multiple Impairment Questionnaire on June 8, 2009, in which he described Wong's symptoms and limitations as being worse than his first questionnaire submitted October, 2008.[2] This opinion strongly suggests that Wong's disability, if any, arose between October, 2008, and June, 2009, a time frame that is outside the period in which Wong had to establish she was disabled. Thus, given that the opinions of Dr. Dingilian were provided after Wong's eligibility for disability insurance benefits had expired, Wong's reliance on the treating physician rule for her disability insurance benefits claim is misplaced.

---

[2] The Court notes that there appears to be a page missing from Dr. Dingilian's Multiple Impairment Questionnaire dated June 8, 2009. Although in all other respects the two questionnaires seem to be the same, Dr. Dingilian's questionnaire from October 28, 2008, contained eight pages while his questionnaire from June 8, 2009, consisted of just seven pages.

Aside from Dr. Dingilian's submissions, the record also provides substantial evidence supporting the conclusion that Wong failed to establish that she was disabled on or before June 30, 2006, her last date of eligibility for disability insurance benefits. At her hearing before the ALJ, Wong asserted that her cervical spine impairment and resulting arm pain had resolved and that she could not work due to her back pain, which began in 2006. Dkt. No. 14 at 13, 20; Tr. at 40–41. Records from the Community Medical Group of the West Valley show that Wong was treated for a variety of ailments between November 12, 2003, and December 2, 2004, none of which are related to the back pain she claims is the basis for her disability claim. Tr. at 207–21. For example, the treatment record shows Wong was treated for appendicitis, ankle swelling, sinus infections, numbness in the right hand, abdominal pain, congestion, cough, and sore throat. *Id.* Additionally, emergency department records from the Simi Valley Hospital and Health Care Services between March 23, 2004, and December 31, 2007, show that Wong was treated for right lower quadrant pain on March 23, 2004, left ankle pain on December 9, 2004, lower back pain on July, 22, 2006, abdominal pain and breathing difficulty on September 2, 2006, and breathing difficulty on December 31, 2007. Tr. at 286–364. The only treatment concerning Wong's back pain occurred on July 22, 2006, which was after Wong's eligibility for disability insurance benefits had expired.

Given the discussion above, the Court finds that there is substantial evidence in the record to support the ALJ's decision. Wong's argument that the ALJ failed to afford proper weight to the opinions of her treating physician with regard to her disability insurance benefits claim lacks merit because Dr. Dingilian's opinions were not provided until after Wong's eligibility for disability insurance benefits had expired. Furthermore, even the evidence submitted by Dr. Dingilian failed to establish that Wong was disabled on or before June 30, 2006.

### 2. Wong's Claim for Supplemental Security Income

Wong also contends that the ALJ failed to follow the treating physician rule in analyzing her claim for supplemental security income under Title XVI of the Social Security Act. While disability insurance benefits are "limited to claimants whose disabilities occurred while they were in insured status," *Thomas v. Schweiker*, 666 F.2d 999, 1001 n.1 (5th Cir. 1982) (internal quotations omitted), supplemental security income benefits "provide assistance to a disabled needy claimant without regard to the claimant's coverage under the [Social Security] Act for disability insurance benefits." *Cieutat v. Bowen*, 824 F.2d 348, 359 (5th Cir. 1987). "In contrast to the insured status eligibility requirements for disability insurance benefits, there are no eligibility period requirements for [supplemental security income] benefits." *Id.* Thus, Wong may be eligible for supplemental security income benefits even though she is not eligible for disability insurance benefits. *See Thomas*, 666 F.2d at 1001 n.1. Despite this difference, the "law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]." *Greenspan*, 38 F.3d at 236.

Wong relies, in large part, on the Fifth Circuit's ruling in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), for her contention that the ALJ improperly discounted the opinion of Dr. Dingilian in evaluating Wong's disability status. *See* Dkt. No. 14 at 11–17. In *Newton*, the court stated that "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 209 F.3d at 455 (internal quotations omitted). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by

medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. The *Newton* court ultimately held that an ALJ should consider each factor listed in 20 C.F.R. § 404.1527(c) "before declining to give *any* weight to the opinions of the claimant's treating specialist." *Id.* (emphasis added). These factors include:

1. the physician's length of treatment of the claimant;

2. the physician's frequency of examination;

3. the nature and extent of the treatment relationship;

4. the support of the physician's opinion afforded by the medical evidence of record;

5. the consistency of the opinion with the record as a whole; and

6. the specialization of the treating physician.

*Id.*; *see* 20 C.F.R. § 404.1527(c). Wong argues that the ALJ failed to follow these standards in evaluating the opinions of Dr. Dingilian and consequently, did not properly follow the treating physician rule.

After reviewing Wong's arguments, the Court finds that the ALJ did not improperly discount the opinions of Dr. Dingilian. In subsequent decisions construing *Newton*, the Fifth Circuit has explained that "the *Newton* court limited its holding to cases where the ALJ rejects the *sole* relevant medical opinion before it." *See Qualls v. Astrue*, 339 Fed. Appx. 461, 467 (5th Cir. 2009) (emphasis added). "Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the [§ 404.1527(c)] factors when declining to give controlling weight to a treating physician." *See Singleton v. Astrue*, No. 3:11-CV-2332-BN, 2013 WL 460066 at *4 (N.D. Tex. Feb. 7, 2013).

In this case, the ALJ did not "reject the sole relevant medical opinion before [her]." Rather, the ALJ simply noted that because Dr. Dingilian is a family practitioner and not an orthopedic specialist, "[h]is opinions and notes must be weighed accordingly." Tr. at 26. Additionally, as will be further detailed below, Dr. Dingilian's opinion was one of several medical opinions considered by the ALJ. Unlike in *Newton*, the ALJ in Wong's case evaluated the opinion of her treating physician against those of several other examining physicians. *Compare Newton*, 209 F.3d at 458 (noting that *Newton* was not "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion").

Here, the ALJ considered several competing medical opinions from both examining and non-examining physicians. From Wong's brief, it appears her primary contention is that the ALJ improperly credited the opinions of Drs. Arthur Harris,[3] Jagvinder Singh, and the opinions of the state agency consultants over the opinions of Drs. Dingilian and Tepper. Dkt. No. 14 at 11–17. Dr. Harris opined that Wong was "precluded from continuous or repetitive cervical motion, holding the head in a fixed position for extended periods of time, very heavy work, and repetitive use of the upper extremities at or above the shoulder level." Tr. at 25. However, Dr. Harris found no work restrictions for Wong's right hand. Tr. at 25. Following his examination of Wong, Dr. Singh concluded that she could stand and walk for about four hours with breaks and that sitting could be done without restriction. Tr. at 372–76. Additionally, Dr. Singh found that Wong could lift and

---

[3] In Wong's brief, she asserts that Dr. Harris's opinion has little probative value because her disability was caused by pain in her lower back, not her cervical spine impairment and resulting arm pain, which was resolved. Dkt. No. 14 at 13. However, Wong alleged a disability onset date of April 27, 2004, in filing her claims for benefits. Thus, the ALJ properly considered Dr. Harris's opinion in determining Wong's disability status.

11

carry twenty pounds occasionally and ten pounds frequently. Tr. at 372–76. The consulting physician for the state agency found that Wong could lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, or crawl, and should not be exposed to extreme heat or humidity. Tr. at 382–86. On the other hand, the ALJ also noted that Dr. Dingilian reported that Wong suffered from disabling back pain as well as decreased function in her right foot. Tr. at 416. The ALJ further acknowledged Dr. Dingilian's opinion that Wong was unable to perform sedentary work on a full-time basis and that Wong had the ability to sit for three hours in an eight-hour workday and stand or walk for one hour in an eight-hour workday. Tr. at 26, 462–76. Although the state agency consulting physicians do not appear to have examined Wong, Drs. Harris and Singh did perform examinations before providing their opinions. Thus, contrary to Wong's assertions, the ALJ did not need to explicitly analyze each specific factor outlined in 20 C.F.R. § 404.1527(c).

   Furthermore, the Court finds nothing to suggest that Dr. Singh's medical opinions are not "well-supported." Dkt. No. 14 at 14. In fact, Wong does not point to any specific evidence on this issue. Instead, Wong continuously asserts that Dr. Singh is non-board certified, that Dr. Singh was not provided with any of Wong's medical records, and that Dr. Dingilian's opinion should be accorded greater weight than Dr. Singh's. First, it is unclear to the Court why Wong continuously states that Dr. Singh is non-board certified when the record shows that Dr. Singh is Board Certified by the American Board of Internal Medicine. Tr. at 376. With regard to whether Dr. Singh reviewed Wong's medical records, Dr. Singh notes in his report that "[a]ll medical records were reviewed." Tr. at 372. Finally, as detailed above, the opinions of a treating physician need not always be given

controlling weight. Such opinions must be "well-supported by medical evidence and cannot be inconsistent with other substantial evidence." *Newton*, 209 F.3d at 455 (internal quotations omitted). If the Court finds substantial evidence supporting the ALJ's decision, it must uphold the ALJ's determination. *Selders*, 914 F.2d at 617. The Court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's]." *Harrell*, 862 F.2d at 475. Thus, the Court now turns to the question of whether there is substantial evidence to support the ALJ's decision.

In her decision, the ALJ credited the opinions of Drs. Harris, Singh, and the state agency consultants over those of Drs. Dingilian and Tepper "based on supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization." Tr. at 26. Aside from the observations of Drs. Harris and Singh, the ALJ also highlighted that Dr. Brian Grossman's evaluation in May, 2004, revealed no muscle spasms and no evidence of painful trigger points. Tr. at 24, 202–206. Motor examination of the right upper extremity was full throughout. Tr. at 24, 202–206. Additionally, the ALJ also stated that a CT scan in 2006 showed no definite fracture or subluxation of the cervical spine. Tr. at 25, 253–66. Furthermore, an MRI in January, 2007, revealed no definite central canal or neural foraminal narrowing and mild scoliosis. Tr. at 25, 267–85. The record also shows that Wong was seen twice in late 2009, once for intermittent dizziness and once for severe cough. Tr. at 477–83. In both of those examinations, the examining physician noted that Wong exhibited normal range of motion of the back with normal alignment and no tender points. Tr. at 477–83.

The ALJ also found Wong's treatment to be inconsistent with the medical response that would be expected if the symptoms were as severe as described. Tr. at 26. The ALJ further detailed

that although surgery was recommended for Wong, she had not obtained it yet. Tr. at 25. The ALJ may consider a claimant's failure to seek medical treatment when facilities are available to the indigent. *See* SSR 82-59, 1982 WL 31384 (Jan. 1, 1982). Wong argues that the ALJ erred in failing to consider that Wong could not afford the surgery. Dkt. No. 14 at 16. However, Wong has not provided any evidence that would show she attempted to obtain but was unable to afford treatment. In considering whether there is substantial evidence to support the ALJ's decision, the Court simply seeks to determine whether there is more than a scintilla of evidence. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). Here, the Court finds the ALJ's decision to be supported by substantial evidence. As such, with regard to Wong's contention that the ALJ failed to follow the treating physician rule, the undersigned must uphold the ALJ's determination of disability as it pertains to Wong's application for supplemental security income.

**B.     The ALJ's Evaluation of Wong's Credibility**

In making a determination on a claimant's credibility, the ALJ must consider the objective medical evidence as well as:

1. the individual's daily activities;

2. the location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. factors that precipitate and aggravate the symptoms;

4. the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

> 7. any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also Salgado v. Astrue*, 271 Fed. Appx. 456, 462 (5th Cir. 2008). In considering these factors, "[t]he ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 Fed. Appx. 241, 249 n.30 (5th Cir. 2011); *see also Pineda v. Astrue*, 289 Fed. Appx. 710, 714 (5th Cir. 2008) (per curiam).

The ALJ found that Wong's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. at 24. Wong contends that the ALJ's credibility findings were not supported by substantial evidence. More specifically, Wong asserts that the ALJ failed to consider the enumerated factors set forth in Social Security Ruling 96-7p and did not consider her statements in the context of the entire record. Dkt. No. 14 at 17–20. Wong also points to decisions from the Seventh Circuit, which criticize the usage of such language by an ALJ as "meaningless boilerplate." *See, e.g.*, *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). However, so long as the ALJ's decision is supported by substantial evidence, the ALJ's determination of credibility is entitled to deference. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). As mentioned previously, this Court may not reweigh the evidence in the record. Thus, the Court must determine whether the ALJ's credibility determination is supported by substantial evidence.

After considering the entire record and the ALJ's decision, the Court concludes that the ALJ's decision is supported by substantial evidence. The ALJ found that Wong's allegations of pain causing limitations beyond the ALJ's residual functional capacity assessment were not credible

because Wong's medical records show treatment that is "inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by [Wong]." Tr. at 24. Additionally, the ALJ noted that the "objective medical evidence fails to fully support" Wong's claims of pain. Tr. at 24. Wong argues that the ALJ only considered the electrodiagnostic testing from 2004 and Dr. Peter Kim's opinion in 2004 that Wong should be able to return to work after one week. Dkt. No. 14 at 19–20. Wong contends that the ALJ should have given consideration to the entire record as well as Wong's testimony at the hearing.

In reviewing the ALJ's decision, the Court is unpersuaded by Wong's argument that the ALJ only considered evidence from 2004 in her determination of Wong's credibility. The ALJ's decision clearly shows that she engaged in a chronological analysis of Wong's medical history as evidenced in the record. For example, the ALJ stated that a cervical spine CT scan in August, 2006, revealed normal alignment. Tr. at 25. The ALJ further noted that in June, 2008, an examination of Wong's hand and wrist for swelling was negative, the cervical spine range of motion was within normal limits, and that there were no tender points. Tr. at 25. The ALJ also fully explained Wong's testimony at the hearing, including Wong's statements regarding her pain medication as well as her representation that she could perform simple house chores on "good days." Tr. at 24. Although Wong's allegations regarding her pain or other symptoms may not be disregarded "solely because they are not substantiated by objective medical evidence," SSR 96-7p at *1, "subjective complaints must be corroborated at least in part by objective medical testimony." *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Here, the ALJ properly considered the entire record, including objective medical evidence and medical opinion before finding Wong's representations regarding her condition not credible. Because the Court finds the ALJ's determination of Wong's credibility to

16

be supported by substantial evidence, the ALJ's decision regarding Wong's credibility as to her claims for disability insurance benefits and supplemental security income is entitled to deference.

## V.  CONCLUSION

In conclusion, the ALJ applied the proper legal standards in Wong's case, her determination was supported by substantial evidence in the record, and there was no error in her determination of Wong's credibility.  The Court will not reweigh the determination or substitute its judgment for that of the ALJ.

For the foregoing reasons, it is ORDERED that the decision of the Commissioner of the Social Security Administration to deny disability insurance benefits and supplemental security income benefits to Melissa Anne Wong is hereby AFFIRMED.

SIGNED this 29th day of March, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE